IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:12-CV-111-FL

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMIE LEE BULLARD, )<br>INDIVIDUALLY and d/b/a )<br>BULLARD'S SPORTS CLUB & )<br>BILLARDS, )<br>)<br>Defendant. ) | ORDER |

This matter is before the court on plaintiff's motion for default judgment (DE # 10) set for hearing tomorrow. Upon further review, the court determines hearing unnecessary. For reasons given, said motion is granted in large part, including a damages award, albeit less than the amount sought, attorneys' fees, and costs, and denied only as to plaintiff's claim for recovery also for the tort of conversion.

**BACKGROUND**

Plaintiff is a California corporation and commercial distributor of sporting events. Plaintiff contracted to obtain the exclusive nationwide commercial distribution rights to "The Floyd Mayweather, Jr. v. Shane Mosley, Welterweight Championship Fight Program" telecast nationwide on May 1, 2010 ("the program"). After obtaining the distribution rights, plaintiff entered into sub-licensing agreements with various entities throughout North America, including in North Carolina, through which it granted these entities limited sub-licensing rights – namely, the rights to publicly

show the program within their respective establishments (*e.g.*, hotels, racetracks, casinos, bars, etc.).

Plaintiff names as defendant Jamie Lee Bullard ("Bullard"), individually and doing business as Bullard's Sports Club & Billiards, an establishment located in Burgaw, North Carolina. Plaintiff asserts that defendant did unlawfully intercept, receive, and thereafter exhibit the program at the time of its transmission at his establishment. Plaintiff further alleges that this exhibition was done willfully and for purposes of commercial advantage or financial gain.[1]

Plaintiff filed complaint for damages on April 30, 2012, raising claims in counts one and two for violations of 47 U.S.C. §§ 605 and 553, and in count three for common law conversion. Defendant was served with summons, as confirmed at docket entry number six, yet defendant did not file answer or otherwise appear. On August 2, 2012, plaintiff filed request for entry of default, which request the clerk granted by order entered August 29, 2012. On September 4, 2012, plaintiff filed the instant motion for default judgment. The court scheduled hearing on the matter for Tuesday, November 20, 2012, in Raleigh, which it now dispenses with.

## DISCUSSION

A.     Plaintiff's Motion for Default Judgment

As noted above, the clerk has entered default against defendant. A defendant, by default, admits a plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. Ryan v. Homecomings Financial

---

[1] See Compl. ¶ 11 ("With full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so, each and every of the above named defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission at their Burgaw, North Carolina location . . . Said unauthorized interception, publication, exhibition and divulgence by the defendant were done willfully and for purposes of direct or indirect commercial advantage or private financial gain.").

2

Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). The defaulting defendant is not, however, held to admit conclusions of law. Id. Further, "the allegations of the complaint regarding the amount of damages suffered are not controlling." Joe Hand Promotions, Inc. v. Coaches Sports Bar, 812 F. Supp. 2d 702, 703 (E.D.N.C. 2011). Thus, the court must first determine whether the well-pleaded allegations of the complaint establish defendant's liability, and second, whether and to what extent plaintiff is entitled to recover damages.

    1.    Alleged Violations of 42 U.S.C. §§ 553 and 605

        a.    Defendant's Liability

Plaintiff alleges that defendant violated 47 U.S.C. §§ 553 and 605. Section 553 was enacted as part of the Cable Communications Policy Act of 1984 and prohibits unauthorized interception or reception of cable communication services. 47 U.S.C. § 553(a).[2] In turn, Section 605, originally enacted as part of the Communications Act of 1934, prohibits unauthorized individuals from intercepting "radio communication" and divulging or publishing the "existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a).[3]

---

[2] Section 553(a)(1) provides: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

[3] Section 605(a) provides in relevant part: " . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto . . ."

47 U.S.C. § 605.

3

Among other things, "Section 605(a) prohibits the unauthorized interception and broadcast of satellite transmissions." J & J Sports Productions, Inc. v. Centro Celvesera La Zaona, LLC, 5:11-CV-00069-BR, 2011 WL 5191576, at *1 (E.D.N.C. Nov. 1, 2011). Finally, sections 553 and 605 permit a "person aggrieved" by a violation of the respective section to bring a civil action in federal district court. 47 U.S.C. §§ 553(c)(1) and 605(e)(3).

The well-pleaded factual allegations of the complaint, which defendant admits by his default, establish defendant's violation of section 553 and/or section 605. Plaintiff obtained the exclusive rights to nationwide commercial distribution of the program. Compl. ¶ 8. Defendant did not enter into a sublicensing agreement with plaintiff to exhibit the program at Bullard's Sports Club & Billiards. Gagliardi Aff. ¶ 7. Plaintiff, without the benefit of discovery due to defendant's default, cannot determine whether the program was intercepted through cable transmission, satellite transmission, or both. However, plaintiff's owner, Matthew Gagliardi, affirms in affidavit that the company's programming could not be accidentally intercepted, and he postulates several means of interception, including but not limited to: use of a "blackbox" installed on a cable line, use of a "smartcard" installed on a DSS satellite receiver line, or use of an illegal unencryption device. Id. at ¶ 9.

Where plaintiff's private investigator informs that he was at defendant's establishment on the date the program aired, and where plaintiff's owner affirms in affidavit that defendant did not contract with plaintiff to display the program and that such program could not be "innocently" intercepted, the well-pleaded facts establish that defendant violated section 553, section 605, or both.

4

See Centro Celvesera, 2011 WL 5191576, at fn. 1 (E.D.N.C. Nov. 1, 2011).[4] Further, defendant's statutory violation was willful and for commercial advantage. See Gagliardi Aff. ¶ 9 (insisting that defendant could not have mistakenly, innocently, or accidentally intercepted the program).

        b.        Statutory and Enhanced Damages

At plaintiff's election, and because calculation of actual damages is not possible, the court will award statutory damages. Section 605 allows an aggrieved party to "recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the court finds that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court may increase the award of damages . . . by an amount of not more than $100,000 for each violation . . ." Id. § 605(e)(3)(C)(ii). Section 553, though similar, provides for a range of "not less than $250 or more than $10,000, as the court considers just" and a willfulness increase "by an amount of not more than $50,000." Id. §§ 553(c)(3)(A)(ii), (B).

Although plaintiff has demonstrated defendant's violation of section 553 or 605, or both, recovery under both sections is improper. See Coaches Sports Bar, 812 F. Supp. 2d at 704 ("Even if a proper claim were made under section 553, where defendants have defaulted and courts have found liability under both section 605 and section 553, damages are usually awarded only under section 605"); J & J Sports Productions, Inc. v. Great Latin Restaurants, L.C., 1:11-CV-459, 2011 WL 5873071 (E.D. Va. Sept. 15, 2011) report and recommendation adopted, 1:11-CV-459, 2011 WL 5873093 (E.D. Va. Nov. 22, 2011) ("Although plaintiff has set forth the elements of liability

---

[4] ("While plaintiff's signal was apparently transmitted via satellite . . . it is not evident how the signal was intercepted and the Program in turn broadcasted because there are multiple methods for illegally doing so . . . Section 553 and 605 contain common elements in so far as liability is concerned, and therefore, it is not fatal that plaintiff does not have evidence of exactly how its signal was intercepted").

under both Sections 553 and 605, courts have held that recovery under both sections is improper.").

Plaintiff, in motion for default judgment, requests damages under only section 605.  Pl.'s Mot. ¶ 5.  Other courts in this district have proceeded under section 605 when it is not possible to conclude whether section 605 or section 553 has been violated.  See, e.g., Centro Celvesera, 2011 WL 5191576, at *2.  As in Centro Celvesera, the court finds here that the distinction between the two sections as to damages is ultimately immaterial, where the court will award plaintiff an amount falling within the ranges encompassed by both section 553's and section 605's damages provisions.  See id.

Plaintiff seeks damages under section 605 in the amount of $100,000.00.  This figure is nearly the maximum amount allowable under section 605, which allows for $10,000.00 in statutory damages pursuant to § 605(e)(3)(C)(i)(II), plus $100,000.00 additional damages for willfulness pursuant to § 605(e)(3)(C)(ii).  The amount plaintiff seeks is grossly disproportionate under circumstances presented.  See Centro Celvesera, 2011 WL 5191576, at *3 (awarding $11,000.00 in damages); Coaches Sports Bar, 812 F. Supp. 2d at 705 (awarding $6,000.00); Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest., Inc., 4:07-CV-67-D, 2007 WL 2700008, at *3 (E.D.N.C. Sept. 11, 2007) (awarding $6,000.00).  Where plaintiff's request is disproportionate to its damages suffered here and in relation to awards in other, similar cases in this district, and where the allegations of the complaint regarding damages are not controlling, Coaches Sports Bar, 812 F. Supp. 2d at 703, the court declines to award plaintiff the full amount of damages sought.

Section 605 affords the court substantial discretion in determining the amount of statutory damages, instructing only that "the party aggrieved may recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, *as the court considers*

*just*." 47 U.S.C. § 605(e)(3)(C)(i)(II)(emphasis added). The undersigned notes that other courts in this district, in determining a "just" amount of statutory damages, have looked to the maximum occupancy of the establishment, Coaches Sports Bar, 812 F. Supp. 2d. at 704, the actual number of patrons present at the time of exhibition, see Las Reynas, 2007 WL 2700008, at *2 (considering, but ultimately rejecting this approach), and the amount the plaintiff would have charged the defendant establishment to sub-license the program, Centro Celvesara, 2011 WL 5191576, at *2.

Here, defendant's establishment had an occupancy of approximately nine people. See Davis Aff. 2. Plaintiff's owner stated in affidavit that the commercial sublicense fee for an establishment of this size would have been $2,200.00. Gagliardi Aff. ¶ 8. This amount, $2,200.00, is a just award of statutory damages under § 605(e)(3)(C)(i)(II).

Next, the court must determine whether plaintiff is entitled to enhanced damages under § 605(e)(3)(C)(ii), which provides for additional damages "of not more than $100,000" for each violation that was committed willfully. Plaintiff's owner testifies in affidavit that defendant could not have mistakenly, innocently, or accidentally intercepted the program. Gagliardi Aff. ¶ 9. Thus, enhanced damages due to defendant's willful violation are appropriate.

Again, section 605 affords the court considerable discretion in determining the amount of additional damages to be awarded due to defendant's willful violation. 47 U.S.C. § 605(e)(3)(C)(ii) ("... the court *in its discretion* may increase the award of damages . . .") (emphasis added). District courts in the Fourth Circuit consider several factors in determining an appropriate amount of enhanced damages:

> With respect to additional damages, "[c]ourts have evaluated the appropriate amount of enhanced damages by assessing factors such as 'repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event;

7

and defendant's charging a cover charge or charging premiums for food and drinks.'" J & J Sports Prods., Inc. v. Lara Sport House Corp., No. 1:10–cv–01369, 2011 WL 4345114, *6 (E.D.Va. Aug. 26, 2011) (citation omitted) (report and recommendation), adopted, 2011 WL 4345098 (E.D.Va. Sept. 14, 2011).

Centro Celvesera, 2011 WL 5191576 at *2.

Plaintiff has not presented evidence that defendant advertised the intended broadcast of the event, nor has it asserted defendant charged any cover on the night of the event. See Davis Aff. 1. Further, there is no allegation defendant is a repeat offender. However, in an effort to deter future piracy, the court awards enhanced damages, adhering to an approach found appropriate in other, similar cases in this district. By multiplying in this case the § 605(e)(3)(C)(i)(II) statutory damages figure by a willfulness factor of three (in effect applying treble damages), the court reaches under the circumstances presented an appropriate final amount. See Coaches Sports Bar, 812 F. Supp. 2d at 705; Las Reynas, 2007 WL 2700008, at *3; G&G Closed-Circuit Events, LLC v. Patel, et al., No. 5:11-CV-633, (E.D.N.C. July 6, 2012) (order granting in part motion for default judgment).

   c. Attorneys' Fees and Costs

Section 605 provides that the court "*shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). Plaintiff is therefore entitled to collect attorneys' fees and costs. Plaintiff's counsel, Jeremy Todd Browner, submits declaration in which he states he worked 4.5 hours on this case and charges $225.00 per hour, yielding total fees of $1,012.50. Browner Decl. ¶¶ 8-10. Having considered the necessary factors, the court determines this amount is reasonable, and grants plaintiff's request for recovery of these fees, together with costs.

  2. Plaintiff's Pendent State Law Conversion Claim

Plaintiff, in Count Three of its complaint, asserts a common law cause of action for

8

conversion and seeks compensatory damages "in an amount according to proof against defendant." Compl. 7. In its proposed judgment, appended as exhibit four to its motion for default judgment, plaintiff specifically requests compensatory damages for defendant's conversion in the amount of $2,200.

Other courts in this circuit "have considered the request for an award of damages for the tort of conversion, *in addition to* statutory and enhanced damages under Section 605 or Section 553 of Title 47, as a double recovery. Under such circumstances, these courts have denied the request for damages." Joe Hand Promotions, Inc. v. Hanaro Bethesda, Inc., CIV.A. WGC-11-191, 2012 WL 2366378, at *7 (D. Md. June 20, 2012). See also J & J Sports Productions, Inc. v. Romenski, 845 F.Supp.2d 703, 707 (W.D.N.C. 2012); J & J Sports Productions, Inc. v. J.R.'Z Neighborhood Sports Grille, Inc., No. 2:09-03141-DCN-RSC, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010). Consistent with these opinions, and where the court's award of damages pursuant to 47 U.S.C. § 605 serves both to compensate plaintiff and to deter defendant's future violations, the court denies in this instance plaintiff's request for conversion damages.[5]

## CONCLUSION

Consistent with the foregoing, the court awards $2,200.00 in statutory damages, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), which figure represents the commercial sublicense fee plaintiff would have charged a commercial establishment, like defendant's establishment, and an additional $6,400.00 in enhanced damages, pursuant to § 605(e)(3)(C)(ii), which figure was reached by trebling the statutory damages of $2,200.00, for a total damages award of $8,600.00. Plaintiff is awarded attorneys' fees of $1,012.50, together with the costs of this action. Also for the reasons given,

---

[5] Similarly, the undersigned did not award damages for conversion in G&G Closed-Circuit Events, LLC v. Patel, et al., No. 5:11-CV-633, (E.D.N.C. July 6, 2012) (order granting in part motion for default judgment).

plaintiff's claim for recovery for the tort of conversion is denied. The court dispenses with hearing.

SO ORDERED, this the 19th day of November, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge